## GEORGE H. STRONG ET AL.
## v.
## CHARLES M. LININGTON.

1. DEFENSES UNDER THE GENERAL ISSUE.—The plea of *non assumpsit* verified, puts in issue the execution of the instrument sued on to the same extent that the plea of *non est factum* did in actions of covenant at common law. So, in assumpsit upon a sealed instrument, fraud in procuring its execution may be shown under the plea of the general issue.

2. SIGNING AN INSTRUMENT—SIGNER MUST READ IT.—If a party signing an instrument can read, it is his duty to read such instrument before signing it, and if he does not and is not prevented by any fraudulent means, he cannot be permitted to say, when sued upon it, that he did not know what it contained.

3. FRAUDULENT REPRESENTATIONS TO PROCURE SIGNING.—Where the terms of a contract were agreed upon, a draft of the contract made, and one of the parties took the draft for the purpose of copying it, and afterwards returned to defendant with a copy which he stated to him was a correct copy of the original draft, with the exception of an alteration mutually agreed upon, but in which other terms had been surreptitiously inserted, and the defendant signed the same without reading it over carefully, it cannot be said, in view of the representations of the plaintiff, that the defendant was guilty of such negligence as would bar his right to set up a fraudulent execution of the contract as a defense.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed March 29, 1881.

This action was assumpsit by appellants, Strong and Young, against appellee, Linington. The declaration contained three special counts upon articles of agreement, under the hands and seals of the respective parties bearing date April 1, 1876, wherein

the plaintiffs were parties of the first part, and the defendant the party of the second part; in and by which the parties of the first part sold and assigned to the party of the second part the sole and exclusive right to manufacture and sell, under certain letters patent from the United States to said Strong, throughout the United States, &c., and the Canadas, for the period of five years from date, a certain improvement on pinchers; in consideration of which the party of the second part was to pay parties of the first part, a royalty of $1.44 for each gross of such pinchers manufactured and sold by party of second part, during that time; payments to be made quarterly, and the instrument declared on contained this stipulation: " And said party of the second part hereby agrees to keep an accurate book of accounts of the number of said pinchers manufactured and sold by him, and render a true. statement therefrom to the first party at the end of each quarter. *Such statement of account to be verified by affidavit by the party of the second part, and also agrees to pay the royalty on at least twenty-five hundred dozen of said pinchers each year,* and in default thereof this contract may, at the option of the said party of the first part, be declared null and void."

It further provided that one-half of said royalty on the twenty-five hundred dozen should be paid to each of the parties of the first part, and all in excess of that to be sixty per cent. to Strong and forty per cent. to Young. Setting out breach.

The defendant pleaded non-assumpsit duly verified.

On the trial, the plaintiffs produced the instrument declared on, proved its execution by showing that the respective parties signed it, the same having been executed in three parts, one of which was left with each of the parties. The defendant then offered to prove, under the general issue verified, that the execution of it on his part was obtained by fraud, by the plaintiffs subsituting a contract different from that he supposed he was signing. To this plaintiffs objected, on the ground that such proof was inadmissible under the plea of general issue, and the facts should have been specially pleaded. The court overruled the objection, and plaintiffs excepted. The defendant thereupon gave evidence tending to show what the original

agreement between the parties, in respect to the subject-matter actually was, and that he had caused his attorney to make a draft of the same in writing, which was done and such draft produced in evidence, from which it appears that the royalty was to be paid to Strong & Young jointly, and as an entirety ; that the words, " such statement of account to be verified, " etc., contained in that declared on, were not in it. Neither were the words ".and also agrees to pay the royalty on at least twenty-five hundred dozen of said pinchers each year. " But instead of that, the draft reads thus: " And shall also make and sell at least twenty five hundred dozen of said pinchers each year during the time aforesaid, and in default thereof this contract may, at the option of said party of the first part, be declared null and void. "

· The defendant gave testimony tending to show that such draft expressed the real contract, and that it was taken by one of the plaintiffs to be copied before execution ; that defendant gave plaintiffs permission to make a change from the draft, to the effect that the royalty to be paid should be apportioned between the plaintiffs. That this was the only alteration from the draft that defendant authorized ; that the draft being taken for that purpose, the plaintiffs afterwards came to defendant's office with what purported to be three copies of said draft for execution, and represented that they were the same as the draft except as to the provision for plaintiffs to each have a certain portion of the royalty to be paid; that defendant, although he glanced the copies over sufficient to see their general nature, did not read them and did not know of the other alterations, and signed without knowing they had been made. There was contradictory testimony given on the part of the plaintiffs as to the representations, and the fact that defendant did not read the papers before he signed them.

The court, at the request of plaintiffs' counsel, gave to the jury the following instructions :

2. The jury are instructed that if they find from the evidence that the plaintiffs are entitled to recover, then their verdict should be for the plaintiffs in the sum of $650.

3. The jury are instructed that if they find from the evi-

Strong v. Linington.

dence that the plaintiffs used no means to deceive or mislead the defendant as to the nature of the contract he was signing, then the plaintiffs are entitled to recover.

4. The jury are instructed that if they find from the evidence that at the time of the signing of the contract in evidence the defendant was a man capable of taking care of his own interests, then no defense has been shown in this case, unless the jury also find from the evidence that at the time the plaintiffs practiced such deceit on the defendant as ordinary care and diligence on his part would not have protected him against.

5. The jury are instructed that the verdict should be for the plaintiffs, unless they find, from the evidence, that the defendant was induced through fraud and deceit of the plaintiffs to enter into a contract different from what he thought he was executing.

Instruction asked by plaintiffs' counsel, which the court refused to give to the jury:

"1. The jury are instructed that the verdict should be for the plaintiffs."

Exception taken by the plaintiffs' counsel.

Instructions given to the jury on behalf of the defendant:

"1. The jury are instructed on behalf of the defendant, that fraud vitiates all contracts as between the parties. And if the jury believe from the evidence that plaintiffs undertook to copy out a draft of a contract that defendant had prepared as evidence of an agreement between them, and put into such copies a material change not specifically agreed to by the defendant, and presented such copies for the defendant's signature without calling his attention to such change, and defendant signed without knowing of such change, then such contract so signed was not binding on the defendant. And the court further instructs you that the provision in the contract in evidence, requiring the defendant to verify his quarterly statements of account by affidavit, is a material change of the original draft; and if this change was not known to the defendant at the time he signed, and was not afterward ratified or approved by him, and was fraudulently inserted by the

plaintiffs, then the contract is not binding upon the defendant.

"2.   If the jury find from the evidence that the plaintiffs, by fraudulent misrepresentations as to material matters, obtained the signature of defendant to the contract offered in evidence, then the jury must find for the defendant."

To the giving of which instructions for the defendant the plaintiffs' counsel duly excepted. The jury found for defendant, and the court, overruling plaintiffs' motion for new trial, gave judgment, and plaintiffs appealed to this court.

Mr. E. A. SHERBURNE, for appellee; upon petition for rehearing, that the instructions must be considered as a whole, and if they then correctly state the law, they will be held good, cited Lawrence v. Hagerman, 56 Ill. 68; Van Buskirk v. Day, 32 Ill. 260; Walker v. Collier, 37 Ill. 362 ; T. W. & W. R. R. Co. v. Ingraham, 77 Ill. 309; Aurora v. Gillett, 56 Ill. 132.

Whether the defendant was guilty of such negligence as should preclude him from setting up his defense, was a question for the jury:   Munson v. Nichols, 62 Ill. 111.

Defendant was not guilty of negligence in this case:   Botsford v. McLean, 45 Barb. 487 ; Taylor v. Atchinson, 54 Ill. 196; Elliott v. Levings, 54 Ill. 213; Lloyd v. Higbee, 25 Ill. 603 ; Mead v. Bunn, 32 N. Y. 275; Eaton v. Winne, 20 Mich. 156.

No man can complain that another has relied too implicitly upon the truth of what he himself stated: Kerr on Fraud, 80; Lloyd v. Higbee, 25 Ill. 603; 2 Addison on Torts, 1,004; Pasley v. Freeman, 3 T. R. 55; Eames v. Morgan, 37 Ill. 260; Weatherford v. Fishback, 3 Scam. 171; Kirkland v. Lott, 2 Scam. 13; Woods v. Hynes, 1 Scam. 103; School Directors v. Boomhour, 83 Ill. 17; Easter v. Minard, 26 Ill. 494; Allen v. Hart, 72 Ill. 104; Kohl v. Lindley, 39 Ill. 195; Gibbs v. Linaberry, 22 Mich, 479; Champion v. Ulmer, 70 Ill. 322; Hubbard v. Rankin, 71 Ill. 129.

Messrs. SMITH & BURGETT, for appellants, on petition for rehearing, as to fraud, contended that if the means of knowledge are alike accessible to both, the parties must be presumed to

have relied upon their own knowledge, and must abide the consequences, and cited Richter v. Roller, 31 Ark. 170, 173; Fulton v. Hood, 34 Penn. St. 365, 371; Capehart v. Mhoon, 5 Jones' Eq. 178, 182–3; Yeates v. Pryor, 11 Ark. 58 ; Hills v. Bush, 19 Ark. 52; Lytle v. Bird, 3 Jones, 222, 225; Walsh v. Hall, 66 N. C. 233, 239; Etheridge v. Vernon, 70 N. C. 713, 724; Credle v. Swindell, 63 N. C. 305; Tallman v. Green, 3 Sandf. (N. Y.) 437, 442; White v. Seaver, 25 Barb. 235, 242; Vanderwalker v. Osmer, 65 Barb. 556; Long v. Warren, 69" N. Y. 426, 431–2, where N. Y. cases are reviewed; Brown v. Castles, 11 Cush. 348, 350; Cowper v. Levering, 106 Mass. 77, 79; Brown v. Leach, 107 Mass. 364, 368; Bell v. Ryerson, 11 Iowa, 233; Bell. v. Henderson, 6 How. (Miss.) 311; Mississippi Bank v. Wilkinson, 3 S. & M. 78; Baker v. Henderson, 24 Wis. 509; Bailey v. Merrill, 3 Bulstrode, 94; Pasley v. Freeman, 3 Term Rep. ; 2 Leigh's Nisi Prius, *1079.

Every false affirmation is not, in law, a fraud. If the truth or falsehood of the representation might have been tested by ordinary vigilance and attention, it is the party's own folly if he neglected to do so, and he is remediless: Moore v. Tubeville, 2 Bibb. (Ky.) 602; Saunders v. Hatterman, 2 Ired. Law, 32; Fields v. Rouse, 3 Jones' Law, 72; Bailey v. Merrill, 3 Bulstrode, 94; Star v. Bennett, 5 Hill (N. Y.) 303, 306; Fulton v. Hood, 34 Penn. St. 365; Schermerhorn v. George, 13 Abb. Pr. (N. Y.) 315; Van Horn v. Keenan, 28 Ill. 445, 448; Miller v. Craig, 36 Ill. 109; Noetling v. Wright, 72 Ill. 390; Swannell v. Watson, 71 Ill. 456; Fagan v. Newson, 1 Dev. Law, 20; Farrar v. Alston, 1 Dev. Law, 69; Saunders v. Hatterman, 2 Ired. 32; Foley v. Cowgill, 5 Blackf. 18; Gatling v. Newell, 9 Ind. 572; Mead v. Munson, 60 Ill. 49; 2 Kent's Com. *484; Willard's Eq. (Potter's Ed.) 151; 1 Storys Eq. § 105, 200 a; Douglass v. Littler, 58 Ill. 342; Spurgin v. Traub, 65 Ill. 170; Tuck v. Downing, 76 Ill. 71; Slaughter v. Gerson, 13 Wall. 379, 383; Vanderwalker v. Osmer, 65 Barb. (N. Y.) 556; Long v. Warren, 69 N. Y. 426, 431.

It was the duty of the defendant to read the instrument before signing: McCormick v. Molburg, 43 Iowa, 561; Haw-

kins v. Hawkins, 50 Cal. 558; Dutton v. Clapper, 53 Ind. 276, 277; Rogers v. Place, 29 Ind. 577–580; Bacon v. Markley, 46 Ind. 116; Upton v. Tribilcock, 1 Otto (91 U. S.), 45, 50, 55; Maine Ins. Co. v. Hodgins, 66 Me. 109; Green v. North Buffalo, 56 Penn. St. 110, 113, 115; Schuylkill Co. v. Copley, 67 Penn. St. 386, 387, 389; Watson v. Planters' Bank, 22 La. Ann. 14; Michael v. Michael, 4 Ired. Eq. 349, 360–1; Jones v. Austin, 17 Ark. 498; Burrow v. Alter, 7 Mo. 424; Mead v. Munson, 60 Ill. 49; Jackson v. Croy, 12 Johns. 427; Mosher v. Carpenter, 13 Hun, 602; Chapman v. Rose, 56 N. Y. 137, reviewing New York cases; Shirts v. Overjohn, 60 Mo. 305, 309, 311, 312, reviewing Missouri cases; 3 Wait's Actions and Defenses, 440–1; Bigelow on Fraud, 73; Bigelow on Torts, 29; Cooley on Torts, 488; 2 Bl. Comm. 304; 2 Greenl. Cruise (2 ed.) 328; Manser's case, 2 Coke, 3; Shulter's case, 12 Coke, 90; Pigott's case, 11 Coke, 296; Thoroughgood's case, 2 Coke, 9.

Cases where one party falsely stated to the other the terms of the instrument signed, are to be distinguished from those in which a different paper is surreptitiously substituted for that intended to be executed: Bigelow on Torts, 29–30; Bigelow on Frauds, 73; Byers v. Dougherty, 40 Ind. 198, 202; Laidla v. Loveless, 40 Ind. 211, 215, 216; Nebeker v. Cutsinger, 48 Ind. 436, 445.

The instructions given for defendant were erroneous and misled the jury, and the judgment should be reversed: Quinn v. Donovan, 85 Ill. 194; Illinois Linen Co. v. Hough, 91 Ill. 63; C. B. & Q. R. R. v. Lee, 60 Ill. 501; Camp Point Manufacturing Co. v. Ballou, 71 Ill. 417; Wabash Railway Co. v. Heuks, 91 Ill. 407; C. B. & Q. R. R. v. Dunn, 61 Ill. 385; Steinmeyer v: People, 95 Ill. 383; Volk v. Roche, 70 Ill. 297; I. C. R. R. v. Hammer, 72 Ill. 349; I. C. R. R. v. Maffitt, 67 Ill. 431; Leonard v. Smith, 11 Met. 330; James v. Langdon, 7 B. Mon. 93; Wadell v. Hughes, 3 Wend. 419; Gaines v. Buford, 1 Dana, 502; Gillespie v. Gillespie, 2 Bibb. 89.

McALLISTER, P. J. This case was submitted to us for decision at the last term of this court; and the conclusion then

reached was that there was error in the first instruction given for appellee, for which the judgment below should be reversed; and that judgment was accordingly entered.  Upon petition a rehearing was granted, and the cause has been re-argued by counsel for the respective parties, and has been carefully reconsidered by the court.

، The first objection which appellant's counsel urge to the judgment below is, that the defense relied upon, and which prevailed there, was not admissible under the plea of non-assumpsit, but should have been specially pleaded.  We are satisfied from our own researches, beyond doubt that the objection is groundless.  The instrument sued upon being under seal, at common law, the only actions which would lie upon it would be debt or covenant.  It being for the performance of covenants, the latter would be the only appropriate action. But by our statute, assumpsit may be brought.  There can be no doubt that the plea of non-assumpsit duly verified, puts in issue the execution of the instrument sued on, to the same extent that the plea of *non est factum* did in actions of covenant at common law.  Assumpsit being now allowable by statute upon sealed instruments containing covenants, the plea of the general issue, especially if verified, will not only operate to put in issue the execution of the instrument, but also the breaches assigned; whereas, the plea of *non est factum* in actions of covenant put in issue only, the making of the instrument; and assignments of breaches were admitted, unless traversed by other pleas.  So that non-assumpsit is a much broader plea than *non est factum*.

The defense relied upon below, was not an attempt to impeach the deed for fraud in the matter or consideration of it, but for fraud in the execution of it.  The distinction is this : under the plea of *non est factum*, the defendant may give in evidence whatever tends to show an invalid or defective execution of a deed at the time of plea pleaded; but whatever impeaches the deed by reason of the matter or consideration thereof, whether such matter or consideration renders the deed void by the policy of the common law, or by the express provisions of statute law, must be specially pleaded.  Whelpdale's Case, 5 Coke,

1,196 note c; Comyns' Dig. Pleader, 2 w. 18; Pigot's Case 11, Coke 27; 1 Chit. Pl. 483.

It may be shown under *non est factum* that a different instrument was substituted in the place of the one which the defendant supposed he was executing. Van Valkenburg v. Rouk, 12 Johns. 337; Taylor v. King, 7 Munf. 358; Gove v. Wooster, Hill & Denio Supp. N. Y. 30.

Between original parties to the instrument the defense is good at common law, and therefore need not be specially pleaded.

But upon a careful reconsideration of this case, we are of the opinion that both of the instructions given for defendant below are, under the circumstances in evidence, erroneous. The defendant is not illiterate. He could read, and he had an opportunity to read the instruments in question before signing, but did not, as he claims. The general doctrine of the law is stated by Blackstone thus: " I proceed now to the fifth requisite for making a good deed, the *reading* of it. This is necessary wherever any of the parties desire it; and if it be not done on his request the deed is void as to him. If he can he should read it himself; if he be blind or illiterate another must read it to him. If it be read falsely it will be void, at least for so much as is misrecited, unless it be agreed by collusion that the deed shall be read false, on purpose to make it void; for in such case it shall bind the fraudulent party. 2 Bl. Com. 304; Comyns' Dig. Tit. Fait. B. 2; Upton v. Tribilcock, 1 Otto, 45. There is no doubt of the general rule, that if a party signing an instrument can read, it is his duty to read such instrument before signing; and if he does not, and is not prevented by any fraudulent means, he cannot be permitted to say when called upon to respond to its obligation, that he did not know what it contained.

But from the defendant's stand-point, and the facts which his evidence tended to prove, this is not the case of one who can read, and merely fails to read the instrument he has signed, and then seeks to avoid responsibility under it because he did not know what it contained. According to the tendency of the evidence of defendant, here were terms of a contract

Strong v. Linington.

agreed upon by parol, and then he has his attorney embody that agreement in a draft upon paper; the plaintiffs take that draft to have copies made for execution, and then get defendant's permission to make a single alteration, which affected only the plaintiffs as between themselves. They return with what purports to be such copies, and represent to defendant, that they are copies of the draft which they so took to copy, with the exception of the alteration above mentioned, which was a matter wholly immaterial as to defendant. The defendant glances at the copies enough to identify the subject-matter, and signs without reading. It turns out that there are two material alterations from such draft embodied into the papers represented to be copies, besides the change they were authorized to make. It is true, that defendant could have read these papers before he signed them, and it was his duty to do so. But at the same time it was for the jury to determine whether as a matter of fact, the plaintiffs, or either of them, made the representations which defendant claimed they did ; whether from all the circumstances, they were fraudulent, and intended by plaintiffs to prevent the defendant from reading the papers, and whether they had that effect. We do not regard it either law or common sense, that a man who can read and fails to read an instrument which he signs, must, under all circumstances, have negligence imputed, which would deprive him of the defense here set up. For fraud assumes such a variety of forms as to set all systematic classification of its victims at utter defiance. So that this defense is not necessarily limited to the illiterate, the blind, or those unacquainted with our language.

Each case depends upon its own circumstances. Cooley on Torts, 491. The law is comprehensively stated by Mr. Justice Byles, in Foster v. McKinnon, 38 L. J. Rep. N. S. 310, and cited in Leach v. Nichols, 55 Ills. 276. He said: "It seems plain on principle and on authority that if a blind man, or a man who cannot read, or a man who for some reason (not implying negligence) forbears to read, has a written contract falsely read over to him, the reader misreading to such a degree that the written contract is of a nature altogether differ-

ent from the contract pretended to be read from the paper which the blind or illiterate man afterwards signs, then at least, if there be no negligence, the signature so obtained is of no force, and it is invalid, not merely on the ground of fraud, where fraud exists, but on the ground that the mind of the signer did not accompany the signature; in other words, that he never intended to sign, and therefore in contemplation of law, never did sign the contract to which his name is appended."

Now, to bring a case within the range of the principle embodied in that statement of the law, it is not absolutely indispensable that the signer should he either illiterate or blind, or that the instrument should be falsely read over to him. Each of those conditions may have its equivalent in circumstances; that is, the signer may not be illiterate or blind, but be prevented from reading by some trick or artifice designed and calculated by the other party to have that effect. And the pretense of making a copy of a draft of an agreement, and the surreptitious interpolation of material alterations in favor of the party making such copy, with a direct affirmation, or even a circumstantial representation, that it was a faithful copy, might be equivalent to the falsely reading a paper which the person misreading held in his hand. So that, in our opinion, the essence of the defense below, consisted in the surreptitious interpolation of the clauses in favor of plaintiffs; the false representation that the paper was a copy of the draft, with the exception of the alteration plaintiffs were authorized to make, with the further condition that defendant relied upon such false representation, and was thereby and without negligence on his part induced to sign said instrument without reading, he at the the time not knowing that such alterations had been made. Except as to the latter, neither of the above hypotheses is contained in the first instruction given for defendant. Indeed, it does not embrace the hypothesis that plaintiffs fraudulently concealed the changes, or either of them, or anything by way of excusing defendant's neglect to read the instrument. The second instruction is too broad, and might extend to matters pertaining to the consideration, as testimony was given on defendants behalf that plaintiffs had

no patent right for the Canadas. Besides, it leaves it to the jury to determine what were material matters. If only the changes were meant, then it was a question of law as to whether they were material or not. If matters beyond that were intended, then it was beyond the scope of what was allowable under the plea. The judgment must be reversed and the cause remanded.

Reversed and remanded.