D. C. Carswell et al., Plaintiffs in Error, v. Binga State Bank et al., Defendants. Mary T. Williams, Defendant in Error.

Gen. No. 37,523.

Opinion filed December 31, 1934.

DOWLING & HEALY, J. C. DE WOLFE, O. C. BROWN and B. C. CYRUS, all of Chicago, for plaintiffs in error.

WALTER M. FARMER, of Chicago, for defendant in error.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This writ of error seeks to reverse an order or decree of the circuit court entered December 20, 1933, dismissing plaintiffs' amended and supplemental bill of complaint for want of equity.

The material allegations of said bill, filed by plaintiffs as depositors of the closed bank in behalf of themselves and all other depositors and creditors to enforce the liability of various stockholders under section 6 of article XI of the constitution of the State of Illinois, are that the Binga State Bank (hereinafter referred to as the bank), a banking corporation, was organized December 1, 1920, with a capital stock of $100,000, subsequently increased to $200,000; that the bank was closed by the auditor of public accounts July 31, 1930, with liabilities to the depositors and creditors in excess of $1,000,000; that a receiver was shortly thereafter appointed for the bank; that the bank is insolvent and in process of liquidation; that plaintiffs are creditors of the bank; and that Mary T. Williams, defendant, was the owner of 43 shares of the capital stock of the bank of the par value of $100 a share from May 21, 1930, to July 31, 1930, the date of the bank's closing.

Defendant's answer alleged that she did not own the stock in question and never had possession or con-

trol of it; that she had neither purchased nor received the stock as a gift; and that she did not know that it appeared in her name on the books of the bank until summons in this cause was served upon her.

A general replication was filed to her answer and the cause referred to a master to take evidence and report same with his conclusions of law and fact thereon. The pertinent portion of the master's report is as follows:

"Dr. A. Wilberforce Williams testified that he had in his possession some money belonging to his wife, Mary T. Williams, which she did not know that he had, and that he on May 21, 1931, without her knowledge caused to be transferred to her forty-three (43) shares of stock in the Binga State Bank then owned by him, and that he bought this stock without her knowledge. The defendant, Mary T. Williams, testified that she often signed business papers at the request of her husband and relied implicitly on his request to sign papers, and she signed Defendants' Exhibit 1 without looking at it or reading it and knew nothing of its contents. Complainants' Exhibit 21 (same as Defendants' Exhibit 1) was offered and received in evidence. It is a paper that was pinned to stock certificate stub A-347, which was the stub of a stock certificate for forty-three (43) shares of stock in the Binga State Bank that was issued to Mary T. Williams. Mrs. Williams also testified that she signed her name to said paper and also wrote her address on the bottom of the paper, which paper was directed to the Binga State Bank, authorizing said bank 'to deliver the shares of said bank in my name to Rosalie M. Edie,' and that said paper was prepared by her husband, Dr. Williams, and was presented to her for her signature. Pursuant to the direction contained in said paper, Rosalie H. Edie, who was the secretary of Dr. Williams, presented said paper to the officers of the Binga State Bank, received

the certificate of stock and signed the receipt for the same, which she then delivered to Dr. Williams. The Master is of the opinion that Mary T. Williams, by the signing of said paper, ratified the issue òf stock of said bank in her name and authorized the delivery of it and is bound thereby and is liable herein as a stockholder.''

Plaintiffs' exhibit 21 referred to in the master's report is as follows:

''Chicago, Illinois, May 27,

Binga State Bank,
   Chicago, Illinois.
Please deliver to Miss Rosalie M. Edie the shares of Binga State Bank in my name and oblige.
                    Mrs. Mary T. Williams,
                      4940 South Parkway.''

The evidence also showed and the master reported that liabilities to the extent of $291,540.44, which remained unsatisfied when it closed, accrued against the bank during the period the stock was registered in defendant's name on the books of the bank, and that a dividend of only 12½ per cent had been paid to the general unpreferred creditors of the bank. The master recommended that a decree be entered against defendant for $4,300, representing the par value of the 43 shares of stock shown by the bank's records to have been held by her.

After a hearing on exceptions to the master's report they were sustained by the chancellor, who found that ''Mary T. Williams was not and is not the owner of 43 shares of the capital stock of the Binga State Bank. . . .''

The only issue presented for our determination is whether defendant is liable as the owner of the 43 shares of the bank stock in question.

After a careful examination of the evidence of defendant and her husband, and considering same and all of the inferences that may be reasonably drawn therefrom in the aspect most favorable to defendant, it presents a most peculiar and suspicious situation to say the least.

Dr. Williams stated substantially that over a period of years he purchased small blocks of the bank stock until he accumulated the 43 shares which he caused to be transferred to his wife May 21, 1930, without her knowledge; that he had been using money belonging to her which she did not even know that he had (and which she apparently never missed); and that, thinking that a dividend would be paid on the stock about July and "to keep peace in the house" by having such anticipated dividend paid to his wife, he caused the transfer of the stock to be made to her. If his purpose was to surprise his wife with the July dividend and "to keep peace in the house" by his transfer of the stock to her, it is difficult to understand why a few days later, May 27, 1930, he requested the bank to deliver the stock to him "with the hope of being able to sell it and get the money to reimburse her without her knowledge." He further testified that, after the bank's refusal to deliver the stock to him without an order from defendant and although the entire transaction was still a dark secret as far as his wife was concerned, he inscribed an order in his own handwriting to the Binga State Bank to "please deliver to Miss Rosalie M. Edie (his secretary) the shares of Binga State Bank in my name" to be signed by defendant; that he placed the paper on which the order was written flat on the table, with the writing uppermost before his wife, and that she signed her name and address beneath the order; and that his secretary presented the order to the bank, secured the stock and delivered it to him.

Defendant insists that she signed the order without reading it because of the confidence she reposed in her husband in business matters. We think the order itself was of such a nature as to attract her eye and attention, either consciously or unconsciously. It was neither an extensive nor complicated document. It consisted of less than 20 words and occupied no more than two or three lines on the paper on which it was written. Defendant admits writing her name and address immediately beneath the order. She testified that she could read and write the English language and we feel that we have a right to assume that she, a doctor's wife, was a woman of at least average intelligence. Even though she had implicit confidence in her husband, and even though she had no deliberate intention of reading the order, it is almost inconceivable that as she signed her name and address beneath the order its import could have escaped her attention.

If a party signing an instrument can read, it is his duty to read such instrument before signing, and, if he does not and is not prevented by fraudulent means, he cannot be permitted to say, when called upon to respond to its obligation, that he did not know what it contained. (*Strong v. Linington,* 8 Ill. App. 436; *Swannell v. Watson,* 71 Ill. 456; *Anderson v. Bills,* 335 Ill. 524.)

It is urged that, while the bank's records may have raised the presumption that she was the owner of the stock, that presumption was conclusively overcome by the unimpeached evidence of defendant and her husband that she did not own the stock and had no knowledge that it had been transferred to her name. We are of the opinion that the testimony of both was impeached by the irrefutable evidence of the order signed by her, which acclaimed her knowledge that the stock was carried on the records of the bank in her name.

It is idle to urge that she could not be held to have ratified the unauthorized act of her husband in transferring the stock to her unless the evidence disclosed that she had been fully and fairly informed of all of the material facts and circumstances. It is sufficient answer to this contention to state that, if she were not cognizant of the facts prior to the presentation of the order to her for her signature, the order itself was enough to put her on notice so that she might interrogate her husband concerning the matter, which she failed to do.

As heretofore stated she admits her signature to the order for the delivery of the stock and is estopped to say that she did not know its contents and was not the owner of the shares of stock referred to therein. The order disclosed on its face that the stock stood in her name on the books. If the transferee of stock does any act approving or acquiescing in the transfer or in any way ratifies it, she becomes liable to be treated as a shareholder, with such responsibilities as the law imposes in such cases. (*Keyser v. Hitz,* 133 U. S. 138, 10 Sup. Ct. 290.)

If we assume that defendant did not know of the issuance of the stock to her on May 21, 1930, the date of the certificate, still, when she signed the order in question May 27, 1930, authorizing its delivery to her husband's secretary, who receipted for it in defendant's name, she must be held to have known of the issuance of the stock to her and to have ratified and acquiesced in its original issuance to her.

We are constrained to hold that, because of the inherent improbability of defendant's theory of fact, coupled with her execution of the order "to deliver . . . the shares of Binga State Bank in my name," the master properly found that defendant was liable as a stockholder of the bank and that the chancellor erred in failing to approve the master's recommen-

dation that a decree be entered against her for $4,300, the par value of the 43 shares of stock owned by her in said bank. Other points have been urged, but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons indicated herein the decree of the circuit court is reversed and the cause remanded with directions to the chancellor to approve the report and recommendation of the master, and enter a decree against defendant for $4,300.

*Reversed and remanded with directions.*

GRIDLEY, P. J., and SCANLAN, J., concur.